Okay, we're going to take the next case. Federal Trade Commission and the Commonwealth of Pennsylvania versus Penn State Hershey Medical Center and Clinical Health System, Appellate number 17-2270. We heard from the appellant. May it please the court. My name is Howard Hopkirk. I am a senior deputy attorney general with the Pennsylvania Office of Attorney General. I represent the appellant, the Commonwealth of Pennsylvania, and I would like to reserve three minutes for rebuttal. The Commonwealth is entitled to attorney fees in this case because it is a substantially prevailing party under Section 16 of the Clayton Act. This section provides for a non-discretionary award of attorney fees where a party obtains injunctive relief. But that statutory provision says that the substantially prevailing event has to be in an action under this section, and our court, when it granted the preliminary injunction, the section it was acting under and the section the under the plain text, how is it that Pennsylvania can get fees under Section 16 when the action under which there was any, if there was a prevailing party, was Section 13? Okay, so I can answer that in in two parts. The first part is that if the court accepts that the catalyst theory still prevails under Section 16 of the Clayton Act, then we don't think you have to get to that question because the Commonwealth brought this lawsuit and certainly as a result of that, in part, the merger dissolved. Okay, so if you don't go that way, I would, we would ask the court to adopt the reasoning of Judge Jones in the District Court who said that this was all part of the same nucleus of operative facts and that in this type of situation, the, even though this court did not reach the Section 16 claim, you still can reach attorney's fees because overall the Commonwealth was successful in the litigation. Well, you could say we didn't reach the Section 16 claim, but we've said that, we noted that irreparable harm was, was present, that you, you know, you can't unscramble the egg, so to speak, so I think that the Section 16 aspect, you know, giving you a little cause for your argument was something that was actually considered. Right, I mean, I think it obviously was there. The court did emphasize the the FTC Act in its decision, but we think it's all part of the same barrel. Well, an injunction was granted in favor, you know, brought by both parties. That's correct, and as we pointed out in our, our brief, the other side did not, when we filed our action, say, wait a second, what are they doing here? They don't have standing. This just has to do with the FTC. They didn't do that, and we did not know how things would play out, and also as far as, as judicial efficiency goes for future cases, if you say, no, you're not entitled to fees in this case, it would just prompt parties like the Attorney General to say, well, we'll just have to file our own separate action and litigate separately. Or pursue your Section 16 claim, because isn't one of the big differences between an injunction under 13b and Section 16 are the elements one must establish to get the relief? Under 13b, you only have two elements, and one could argue that even the likelihood of success element is even more reduced in 13b. And that's what the other side argues, but we, we believe that under Section 16, which should be liberally construed, we did achieve all of the relief that we were asking for in the complaint. Okay, look, that's, that's right. The, your complaint asked for basically a status, keep everything as the status quo pending the FTC proceedings. It's basically what you want, a freeze. Right. But where was the new adjudication on the merits? And I ask that because in Singer, our en banc court said a preliminary injunction is not a ruling on the merits. And Buckhannon says you need a ruling on the merits or a court-ordered change in the relation between the parties to be prevailing. So don't those two propositions and those two cases foreclose your fee request, even if we were to agree on your Section 16 view, or assume your Section 16 view is correct? Okay, so first I would again say that if the catalyst theory still applies, then you don't have to reach that question. Singer and some of the other, Singer was a Section 1983 claim, and so this goes to the heart of the idea that there is something different between substantially prevailing under Section 16 of the Clayton Act and, for instance, a Section 1983, we're seeking fees under Section 1988. Because of the word prevailing, the presence of the world substantially, I mean? Is that what you're saying? Yes, yes. But in our Litko case, we said it didn't matter that it would be viewed the same. So our precedent already tells us to read those, read substantially prevailing and prevailing as being interchangeable. Well, part of our argument is that there's something unique about Section 16 and the language used there, and the fact that it only allows for injunctive relief. And if you say, well, you got injunctive relief, but that doesn't meet the Buchanan type of... I mean, isn't that the answer to the question? Section 16 is different. It says, you get an injunction, you get fees. Right, I mean, that really is our basic position, that there's something different, not only between the Clayton Act and Section 1983, but between the Clayton Act and maybe some other statutes that use substantially prevailing, where it's more of a merits type of inquiry. Well, the other thing is, usually when a preliminary injunction is granted, it's part of a complaint where you then, you get the injunction pending the determination on the merits. But here, the Correct? There wasn't going to be a merits. That's correct. So, I mean, the only way for our office to get a decision on the merits would be to have the proceeding go forward, and then the FTC rule against us, and then a year or two years later, you know, argue our position in court. But at that point, it's too late to unscramble the eggs. The merger has already been consummated, and, you know, any type of meaningful relief is illusory. But your position is, would be then, that when a party obtains a preliminary injunction, that's enough? If that's all they, if the only equitable relief a party asks for in a complaint is a preliminary injunction, is that already enough? Under Section 16 of the Clayton Act, or at least, I'm not saying there wouldn't be circumstances where, you know, it might be different. But here, we're really, we get the most. But Section 16 doesn't use the word preliminary injunction. It uses injunctive. But you can get injunctive relief. You can sue for and have injunctive relief. And we know there's case law that says permanent injunctive relief. Why should there be a difference between preliminary injunction and permanent injunction relief under Section 16? But the flip side of that is, it specifically talks about attorney's fees, and it doesn't say attorney's fees for permanent injunctions. It seems to cover any type of relief achieved under Section 16. I understand that, as long as you substantially prevail. But it's not, you're asking us to interpret injunctive relief obtained under Section 16 as different than injunctive relief obtained under Section 1983, or some other fee-shifting statute. Is that what you're asking us to do? To make that distinction? Yes. And I would also point to, I mean, there are cases, and they're cited in our brief, like the Bagby case, the Templin v. Independent Blue Cross case, and the MR v. Ridley School District case, where a party doesn't achieve success on the merits, but achieves some kind of procedural type of, you know, due process. I understand, and I've read those cases. Templin doesn't really work because it's the ERISA fee-shifting statute. It's written very differently. In Bagby, the plaintiff sort of had two types of claims. One is, give me a hearing on my due process, my violation, and the other is, do I prevail with my employment dispute? And the court there said, you prevailed on your due process violation. And in MR, the court was simply saying, during the stay-put period, there was a fight between the parties about paying for compensatory education, and they won that fight. So there was a merits determination in each one of those cases on cause of action. Here, we don't have a merits determination. Are you asking us to sort of ignore the singer analysis of what a preliminary injunction is? Don't we have to do that for you to win? How about people against police violence? If you say Buckhannon would apply, then you would have to say, well, there's something different about Section 16. In order for you to win. For us to win, yes. I understand. How about, you haven't mentioned people against police violence. That, to me, is your best case. So that, I mean, that's a preliminary injunction case where, you know, so it's analogous. At the end of the proceedings, plaintiffs had achieved precisely what they sought, and success was a result of plaintiffs' efforts in court-enforced victories rather than defendants' voluntary actions. And that's post-Buckhannon. Doesn't that help you? I think it does, yes. And we recited that in our brief. I mean, I think to some extent, all these cases, and even when you say, well, maybe they're a little different, they do show that there's not the absolute rule that you never get attorney's fees in a case like this. Let me just ask Judge Nygaard. Judge Nygaard, do you have any questions for counsel? No, thank you. I'm not interrupting you, counsel. I just wanted to make sure the judge had a chance. Okay. So, I mean, that's our basic position. I have rebuttal time, so I'll just leave. We'll see you back on rebuttal. Thank you.  William Cogburn, HB Diapeles, Penn State Hershey Medical Center, and Pinnacle Health System. As the prior questioning has identified, there are two points that Pennsylvania needs to establish to secure reversal of the district court's decision denying fees and costs, but it cannot establish either. First, Pennsylvania did not substantially prevail in an action in this case, as is required for fee shifting under Section 16 of the Clayton Act. How did they not? Because this court has held that a preliminary injunction grounded only in a likelihood of success on the merits is not enough to trigger fee shifting. That was the en banc court's holding in Singer, and that is all that this court ordered here. It was very clear that the relief that it was ordering was a preliminary injunction based only on a likelihood of success and a weighing of the equities, which are the two standards, the two factors set forth in Section 13B. But in Singer, there was a voluntary change of position that mooted the case. There was a TRO, and then the defendant changed its position, and it mooted the case at the preliminary injunction stage. It was not even a preliminary injunction entered. Well, but this court, I believe both the majority opinion and Judge Roth's dissent recognize that TROs and preliminary injunctions are the same in that both go to the likelihood of success on the merits. And in Singer, there were two aspects to what happened. First, the presiding judge found that the plaintiffs were likely to succeed. That was the basis for entering a TRO. And after the court made that finding, there was a voluntary capitulation, a change in the state's legal position. And this court in Singer said that neither was enough to justify fee shifting. But don't you have a Clayton Section 16 mandate by Congress? If you get an injunction, you get fees because we're going to incentivize people to come into court, private attorneys general, if you will, and say this is wrong, this shouldn't happen. And that's what happened here. And we reversed the district court's determination and said, you know, you deserve an injunction. How is it that when they prevailed in this way that fees are not afforded when Congress said they're to be paid? Because they did not prevail in a way that is sufficient to trigger fee shifting under Buchanan and Singer. Under Buchanan, you have to have a judicially sanctioned alteration in the legal relationship of the parties. Didn't that happen here? I mean, in Buchanan, the contention was we filed a suit. And after we filed a suit, this happened. All Buchanan did was said the catalyst theory doesn't apply. And it used as an example of when there would be an alteration, a merits determination or a consent decree. But it didn't limit the opportunities when there can be a judicially sanctioned alteration in the legal relationship. And didn't that happen here with an injunction? When we said, we sent it back and said, enter this injunction to prevent this from happening, maintain the status quo. No, Your Honor. That's actually exactly the point. There was not a material alteration of the parties' legal relationship. Pennsylvania has made clear, including my friend speaking shortly before me, that all that the injunction they sought was to accomplish a maintenance of the status quo. And you can look at the- That's all they asked for. Well, that's right. And that's not enough. Maintaining the status quo does not affect the material alteration of the legal relationship. But that's what Section 16 says, an injunction. I think you're conflating what Buchanan really says in relation to Clayton 16. Clayton 16 is a separate act of Congress. Section 16 would have full force in a case where a plaintiff obtains, for example, a permanent injunction. The statute speaks of, as Judge Schwartz noted, injunctive relief. That's what they got. It came up to our Court and went back. They only ever sought and obtained a preliminary injunction that was grounded in a likelihood of success on the merits. And, in fact, this goes to the fact that this was not actually a Section 16 case at all. This was a Section 13b case, which is how the case was litigated exclusively and how it was decided by this Court. The only relief, as this Court noted in its opinion, that is available under Section 13b is a maintenance of the status quo pending a merits proceeding in the FTC Administrative Tribunal. And that is what this Court was very mindful of, and it made clear that it was simply maintaining that status quo, not altering any relationship between the parties. If you look at page 76 of the appendix, this is in the complaint, the plaintiffs themselves defined the status quo, and they defined it as vigorous competition between the hospitals. The hospitals were separate entities before this lawsuit began, and all that this Court said was they will remain separate entities long enough for the FTC. So it's your position that even though all the complaint asked for was maintaining the status quo, basically a preliminary injunction in the form to do that, even though they prevailed in a kind of a definitional sense, they won, they got what they wanted. Is it your position that that's not enough? When they chose to only seek interim relief, they have basically given up the opportunity to get a merits-based determination from a court? Exactly, Your Honor. The fact that they were never seeking merits-based relief, which Pennsylvania has been very clear about, only confirms that fee shifting is not available. In fact, it also confirms that, again, this was only ever a 13b case in which the merits are never to be adjudicated by the court. How do you deal with your adversary's reliance on Mary Gagney? Mary Gagney does not speak to this situation because in Mary Gagney, Pennsylvania is relying on that case for the idea that there could be a non-fee shifting claim and a fee shifting claim and relief on that, or success on a non-fee shifting claim would entitle a party to fee shifting. Mary Gagney, all of the claims were subject to fee shifting. The Supreme Court made that clear in a decision issued that very same day. There was a separate portion of the opinion that referred to an 11th Amendment question because the case involved a request for fees against the state. But I thought Mayor talked about a circumstance where if you have in one complaint a fee shifting claim and a non-fee shifting claim, and if there's a ruling on the non-fee shifting claim, as long as they arise from the same operative facts, because the case was brought to enforce, I think that's the language, 1983, you could get fees. Am I correct about what Mayor Gagney is? They were referring to legislative history on that point, going to the 11th Amendment question again. So looking to whether the underlying claims that were the basis of the 1983 claim were claims that could get through a state's 11th Amendment immunity to paying fees. There's no legislative history like that for Section 16. And even if there were some concern about that, I think that Mary Gagney involved a totally different situation where the court could be concerned that a presiding court would be faced with 1983 claims, some presenting constitutional issues, some presenting non-constitutional issues, and based on the well-established doctrine of constitutional avoidance, might want to not reach the constitutional issues unnecessarily. And the idea was we don't want to undermine any incentive by punishing a plaintiff and taking away fees in that situation. That concern is not implicated here in any way. Isn't it also, tell me whether it's significant or not, that the statute's written differently? That Section 15 U.S.C. Section 26, which we're all calling Section 16, speaks of any action under this section in which the plaintiff substantially prevails. Does that language communicate to you that the prevailing plaintiff has to prevail under Section 16? Yes. Yes. And this was never an action under Section 16. Well, how do you reconcile the fact that when we sent the case back, we reversed and sent the case back, we will remand the case and direct the district court to enter the preliminary injunction requested by the FTC and the Commonwealth? Why wouldn't we just say requested by the FTC? It was still a preliminary injunction only under Section 13b. The fact that the Commonwealth had joined the FTC in making that request doesn't change. But the Commonwealth's position was strictly Section 16. But they never even asserted that. To this day, the Commonwealth has never even cited the Section 16 standard, which is different from and stricter than the Section 13b standard. But we made the finding about irreparable harm, and we made a finding that really wouldn't be necessary to the FTC proceeding. Your Honor, I don't actually think that that can be taken as a finding of irreparable harm. First, the court said that it would be difficult, extraordinarily difficult, but never irreparable to unscramble the egg. It will be too late to preserve competition. But the really important point is the court's based that on its data in the footnote that accompanies that finding. We presume that the hospitals would begin sharing confidential information and distributing patients to different facilities. They were presuming because there was no evidence as to the speed with which the merger would be consummated. There was no evidence as to when information would be shared or how patients would be distributed. The court was relying simply on case sites from the FTC in Pennsylvania about this unscrambling the egg concept. So there's no evidentiary record to support an irreparable harm finding. But they filed a joint motion under both sections. I don't know how you parse it in that way. Well, Your Honor, the complaint that they filed, it cited Section 16 and Section 13B. It cited Section 16 only for the proposition that Pennsylvania was in the case under that section. And that was the only way. And we ordered them to enter an injunction that both of them requested. But Section 16 sets forth a different standard that was never mentioned in that complaint. That complaint quoted Section 13B in its entirety, walked through the factors, never said a word about Section 16, about irreparable harm, about harm to the hospitals. And the plaintiffs continued that conduct throughout the litigation. They strategically chose never to litigate under the stricter standard. And this goes to the concern that the district court providing over the Staples litigation articulated in denying an identical request by Pennsylvania for fees, that a plaintiff in this situation, a state cannot have it both ways. They cannot choose to litigate a case exclusively under the more lenient 13B standard. They don't have any right to sue under 13B. Well, they could have chosen to pursue a Section 16 claim, but they strategically chose not to. And instead, they stayed in the case without ever attempting to build a record on the Section 16. They wouldn't have been a party in interest in a Section 13 claim. Or is your point that they could have brought their own Section 16 claim? Exactly. They could have, but chose not to. And it was only after this court had entered its preliminary injunction that Section 16 was ever brought up beyond a citation for jurisdictional purposes. How do you respond to the district court's, I'll call them sort of practical or, you know, judicial economy kind of concerns? That is, you know, if we don't incentivize the state to join with the FTC, aren't we putting up a situation where the state will feel compelled to go on its own so that it can ensure it gets compensated for the efforts it's making? And then the district court would be confronted with having to deal with basically two parallel cases. I think that concern is misplaced because it starts with the assumption that parties are going to do whatever they can, not in their best interest in the case, but simply in order to obtain fees. And that's not the way that this court has instructed us to assess these things. Instead, we look at what parties actually did. And there's a very good reason that Pennsylvania would not litigate under Section 16. 13b is easier. It's a lower standard. As you articulated, Judge Schwartz, the likelihood of success requirement has been articulated in a lower way by a number of courts. There's no requirement of irreparable harm, as this court noted. The weighing of the equities does not really give serious consideration to private equities on behalf of the emerging entities. These are all very good reasons that a plaintiff would not try to litigate a case under Section 16. And that speaks to, I think, why these cases always proceed in this fashion, where the FTC litigates under 13b, and there has never been a case in which a state who joined that action and litigated exclusively under 13b was awarded its fees under Section 16. Is there a case where they've been denied fees? This has never been the case. It was the Staples case. And to our knowledge, that is the only other time this has arisen. Pennsylvania, in their reply brief, sought to disprove this by saying that the St. Alphonsus case was an example, but in that case, there was no 13b claim. The case was litigated under Section 7 of the Clayton Act, and a permanent injunction was obtained, which just proves our point. Here, there was no permanent injunction, and so no relief on the merits, and there was no litigation of the action that is actually subject to fee shifting. Counsel, let me just see. Judge Nygard, do you have any questions? Thank you, no. Okay. You can continue, counsel, if you'd like. Unless there are any further questions, we would ask that the decision below be affirmed. Okay. Thank you, counsel. Thank you. So I think the Court basically understands our position. However, I did want to point out in Section 16 of the Clayton Act, it specifically talks about preliminary injunctions being issued. It's reproduced on page 15 of our – Can you give us the citation, 16 subsections? Section 16 of the Clayton Act. Or 15 U.S.C. 26. Yeah, that's – Subsection something. 15 U.S.C. Section 26. I only saw the words – I'm sorry. I only saw the word injunction. And you're saying you can get preliminary injunction? Those are the words there? And does it say preliminary injunction, too? Yeah. So it's reproduced on page 15 of our brief, but you could obviously look up the statute, too. It's not – the statute isn't – Read what you're referring to. Yeah, could you? Read what you're referring to, please. Injunctive relief against threat in conduct will cause loss or damage, is granted by courts of equity under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted, and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue. I didn't read the whole thing, but – Okay. And that specific citation is? 15 U.S.C. Section 26. That section – that is Section 16 of the Clayton Act. The site is 15 U.S.C. Section 26. Thank you, counsel. And we would ask that the court reverse and remand the case for – to determine the appropriate attorney's fees. All right. Thank you. Thank you, counsel, on both sides for the well-argued and well-briefed case. We have one more left this morning, but we're going to take a five-minute break, and then we will call our final case for the morning. All rise.